## Chicago, B. & Q. R. R. Co. v. Ruth S. Harrison, Executrix, etc.

1. RAILROADS—*Right to Determine the Route by Which Passengers Shall Leave Trains.*—A railroad company has the right to determine the routes by which passengers shall enter upon and leave its trains, and where a safe and suitable egress in one direction is provided, and a passenger, instead of taking it, clambers over a locked gate and gets upon the track in an opposite direction, he severs his relation with the company as a passenger and becomes merely one toward whom the exercise of the highest diligence ceases to be an obligation.

2. ORDINARY CARE—*Where One Is Not in the Exercise of.*—Where a person is killed while alighting from a train and proceeding along a route upon which he has not been invited, and where the railroad company has no reason to expect him to be, such person can not be said to be in the exercise of ordinary care for his personal safety.

Trespass on the Case.—Death from alleged negligence.  Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding.  Heard in the Branch Appellate Court at the October term, 1900.  Reversed, with a finding of facts.  Opinion filed February 21, 1902.

Statement.—November 21, 1894, the Rev. Dr. Henry S. Harrison, then living at the village of LaGrange, and Edward T. Merrill, boarded, as passengers, one of the local trains of the Chicago, Burlington and Quincy Railroad Company at its Canal street station for the purpose of riding thereon to the village of LaGrange.  Mr. Harrison and Mr. Merrill sat in the same seat of the third car of the local train.  When that train reached LaGrange it was about 5:45 P. M., and quite dark.  It came to a full stop, and Mr. Merrill first got off the train and was followed by Mr. Harrison; they both left the train on the same side, to wit, its south side.  In order to get off the train on its south side they had to climb over a small gate just over the steps on that side of the car.  This gate was three feet six inches (waist) high, and was locked.  After they had reached the ground Mr. Merrill and Mr. Harrison went south toward the station.  The track upon which the local train came to a standstill was north of and farthest away from the station.  The train came to a standstill directly

opposite the station, and between that track and the station there were two other tracks, one of which was known as the middle track and the other as the southern track. While the local or suburban train was standing there discharging its passengers for LaGrange, an express train came from the west, running east on the southern track, the one nearest the station building, running at a speed of about fifty miles an hour. Mr. Harrison, in passing from the middle to the southern track, stumbled over some tie-plates or rails which were between the middle and southern tracks, and fell or ran into the engine of the passing train. He was thrown by the engine some twenty feet and killed. His body lay fifty to seventy-five feet west of Fifth avenue. Adjoining the northern side of the train upon which Mr. Harrison rode to LaGrange was a platform between two and three hundred feet long and twelve feet wide. The tracks at LaGrange ran east and west. Fifth avenue runs north and south and crosses the tracks. Its west sidewalk is about fifty feet from the extreme east end of the depot proper. The platform runs to Fifth avenue. The rear end of the train from which Mr. Harrison alighted stopped about fifty feet west of Fifth avenue.

CHESTER M. DAWES and JOSEPH A. CONNELL, attorneys for appellant.

THEODORE G. CASE, attorney for appellee.

MR. JUSTICE WATERMAN delivered the opinion of the court.

The principal question in this case is, was the deceased killed while in the exercise of ordinary care.

A railroad company has the right to determine the routes by which passengers shall go upon and leave its trains. Appellant, as plainly as is possible, forbade passengers getting off the south side of the train upon which the deceased rode. It provided a safe and suitable egress to the north. When Mr. Harrison clambered over a locked gate and got upon the track to the south of that upon which his train stood, he severed his relation as a passenger

and became merely one whom no person could recklessly or willfully injure with impunity, but toward whom the exercise of the highest diligence had ceased to be an obligation.

Not far from where he was struck by the east-bound train was a cross-walk leading from the north to the south platform; he was near or upon this cross-walk when he came into contact with the engine.

The train upon which he had been carried to LaGrange was yet at the station discharging passengers. Had he departed therefrom to the north and walked east upon the platform to Fifth avenue, and there perceived no gate or warning of the coming of the east-bound train, he probably would have been in the exercise of ordinary care in proceeding on Fifth avenue over appellant's tracks. Thus doing, he would have observed the regulations of the company whose passenger he was, and been in the exercise of his rights as a traveler upon a public highway.

Instead of this he failed to avail himself of a plain invitation to go out to the north and disregarded a manifest command not to go to the south; and in so doing placed himself upon the right of way of appellant at a place not only where he had no right, but was by the company forbidden to go.

It is true, he was not, as is urged, injured while climbing over the gate, nor necessarily in consequence of his so doing; yet it is probably the case that had he not so done he would have been yet leading an honorable and useful life.

He was killed while proceeding along a route upon which he had not been invited, and where appellant had no reason to expect him to be.

Under the evidence, it was for the jury to say whether he was struck while on the cross-walk leading from the north to the south platform. If he were there, was he then in the exercise of ordinary care; and was the railway company bound to proceed upon the hypothesis that he might then be there.

The purpose for which this plank walk or sidewalk, not upon any street or highway, but running from the north

to the south platform, was used, does not appear; nor what had been the custom as to passengers or others walking thereon.

At the time in question, it was closed by the suburban train, extending apparently more than a hundred feet east and west of its north end.

Gates could not have made this more obvious.

The deceased walked very fast or ran southward with his head down, "in a kind of stooping position;" the whistle of the coming east-bound train had blown—he lived to the southwest; oblivious to the warning of a fellow passenger not to get off on the south side, he had done so, for he was hurrying home.

No person can read this record without sorrow and none without being convinced that the deceased was killed because of his failure to exercise ordinary care.

He lived at LaGrange, and must be presumed to have known that which was common knowledge to all dwellers in that suburban town, that fast mail and express trains pass such stations, running at great speed.

The failure to sufficiently light the station grounds, if such there were, did not tend to bring about this accident. The light of many lamps would not have disclosed the coming train so plainly as did its whistle.

The court erred in not instructing the jury to find a verdict for the defendant.

The jury should have found that the deceased was not in the exercise of ordinary care.

The judgment of the Circuit Court will be reversed without remandment, and with a finding of facts.